IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY WILLIAMS, PRO SE, | § | |
| also known as MICHAEL A. WILLIAMS, | § | |
| TDCJ-CID No. 1445347, | § | |
| Previous TDCJ-CID No. 731471, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:12-CV-0120 |
| | § | |
| Major DARRELL K. NASH, and | § | |
| Sgt. LEO J. RAMIREZ, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER OF DISMISSAL

Plaintiff MICHAEL ANTHONY WILLIAMS, acting pro se and while a prisoner

confined in the custody of the Texas Department of Criminal Justice, Correctional Institutions

Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining

against the above-referenced defendants and has been granted permission to proceed in forma

pauperis.

By his complaint, plaintiff states that, when defendant Sgt. RAMIREZ was able to

confirm plaintiff was a member of a Security Threat Group, the Mandingo Warriors, plaintiff was

assigned to new housing outside of the dorm and his job was terminated by defendant

Major NASH.  Plaintiff says the defendants had him placed on the Security Threat Group, or

STG, list.  Plaintiff argues this constitutes racial discrimination because the Mandingo Warriors

are "an organization and tribe of African culture and descent."  Plaintiff argues that Major Nash

said no gang of any type is allowed to work in maintenance or be housed in the dorms, but there

are "Crips, bloods, Texas Synicute [sic], Ayran [sic] Nation, Ayran [sic] Brotherhood living and working in Maintance [sic] dept. living in the dorms building."

As relief, plaintiff requests the Security Threat Group designation be removed from plaintiff and from all members of the Mandingo Warriors in TDCJ.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The District Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

---

[1]A claim is frivolous if it lacks an arguable basis in law or in fact, *Booker v. Koonce*, 2 F.3d 114, 115 (5th Cir. 1993); *see*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2]*Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

## THE LAW AND ANALYSIS

Although prison inmates do not lose all their constitutional rights when they enter prison, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *See, Sandin v. Conner*, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), quoting *Jones v. North Carolina Prisoners' Labor Union*, 433 U.S. 119, 125, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977), quoting *Price v. Johnston*, 334 U.S. 266, 285, 68 S.Ct. 1049, 93 L.Ed. 1356 (1948). Thus, "the exigencies of prison administration justify ... more stringent restrictions on prisoners' speech and association than would be permissible on the outside." *McNamara v. Moody*, 606 F.2d 621, 623 n.3 (5th Cir.1979). The inherent demands of institutional correction, the deference owed to prison administrators, and the subjugation of individual liberty that lawful incarceration necessarily entails justifies the attempts by prison officials to ascertain inmate membership in groups deemed a threat to the security of the institution and actions taken to control that threat. *See Jones*, 433 U.S. at 132, 97 S.Ct. at 2541 (recognizing that prison administrators may curtail an inmate's ability to exercise constitutional rights to prevent "disruption of prison order," ensure stability, or to advance other "legitimate penological objectives of the prison environment").

Prisoners have no constitutionally protected liberty or property interests in their prison job assignments. *Jackson v. Cain*, 864 F.2d 1235 (5th Cir. 1989)(state prisoner); *Bulger v. U.S. Bureau of Prisons*, 65 F.3d 48 (5th Cir. 1995)(federal prisoner). Therefore, the fact that plaintiff lost his prison job assignment does not provide a basis to support a claim under section 1983. Moreover, on numerous occasions, the Fifth Circuit has held that "[i]nmates have no protectable property or liberty interest in custodial classification." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th

Cir. 1998)(change in security classification based on allegedly inaccurate information).  Since a prison inmate has no protectable liberty interest or property interest in his prison job assignment or his custodial classification, *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992), it is clear plaintiff has no liberty interest in retaining or obtaining classification as a General Population Inmate eligible to house in the dorms or work in maintenance, *Sandin v. Conner,* 515 U.S. 472, 484 (1995).  This claim lacks an arguable legal basis and is frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

As to plaintiff's argument that his treatment is racially discriminatory, plaintiff does not allege all African-Americans are disqualified from living in the dorms or from working in maintenance, only that those who are members of the Mandingo Warriors are so disqualified.  To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class or due to an irrational or arbitrary state classification unrelated to a legitimate state objective. *Washington v. Davis*, 426 U.S. 229, 247-48, 96 S.Ct. 2040, 2051-52, 48 L.Ed.2d 597 (1976); *Stern v. Tarrant County Hospital District*, 778 F.2d 1052 (5th Cir. 1985), *cert.denied*, 476 U.S. 1108, 106 S.Ct. 1957, 90 L.Ed.2d 365 (1986).  A classification neither involving fundamental rights nor proceeding along suspect lines is accorded a strong presumption of validity and does not violate the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 113 S.Ct. 2637, 2642, 125 L.Ed.2d 257 (1993).  Furthermore, the failure to articulate the purpose of rationale of a classification is not fatal, and the classification "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a

4

rational basis for the classification." *Id.* The rational basis for the treatment of members of the Mandingo Warriors differently from other non-Mandingo Warrior inmates is clear from plaintiff's factual allegations; and the Court will afford the judgment of prison officials in security matters such as this the deference it is due.

Plaintiff also asserts members of gangs primarily consisting of African-Americans, such as the Crips and the Bloods, and members of gangs primarily consisting of Caucasians, such as Aryan Nations, are housed in the dorms and working in maintenance. Plaintiff does not state the defendants have been able to verify such membership or that those inmates have not renounced that membership. Further, he does not state how he could have personal knowledge of such facts. Nevertheless, if this allegation is true, it conclusively disproves plaintiff's claim of racism as the basis for treating the Mandingo Warriors differently from these other Security Threat Groups.

Plaintiff's claim that the classification of the Mandingo Warriors as a Security Threat Group is a product of racism lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

## CONCLUSION

Pursuant to Title 28 U.S.C. sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(c)(1),

IT IS HEREBY ORDERED that the Civil Rights Complaint filed pursuant to Title 42, United States Code, Section 1983, by plaintiff MICHAEL ANTHONY WILLIAMS be DISMISSED WITH PREJUDICE AS FRIVOLOUS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

THIS DISMISSAL QUALIFIES AS A "STRIKE" UNDER THE PRISON LITIGATION REFORM ACT.

A copy of this Order shall be mailed to plaintiff and to any attorney of record by first class mail.

The Clerk shall also provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ—Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 9362159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342–0629, fax: 936-437–4793; and (3) the District Clerk for the Eastern District of Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three–Strikes List.

It is SO ORDERED.

Signed this the _____30th_____ day of ____May_____, 2012.


MARY LOU ROBINSON
United States District Judge